**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

Christina Barlet                      :

    Plaintiff,                        : Civil Action No. 3:17-CV-278

    v.                               : (Judge Richard P. Conaboy)

NANCY A. BERRYHILL,[1]                 :
Acting Commissioner of
Social Security                       :

    Defendant.                        :

_____

**Memorandum**

**I. Background.**

    We consider here the appeal of Christina Barlet, on behalf of
her minor daughter, Elizabeth Barlet, from a decision of the Social
Security Administration ("SSA") or ("Agency") that denied her
application for Supplemental Security Income ("SSI")benefits.  The
application was denied administratively on December 12, 2013.
After a hearing before the Administrative Law Judge ("ALJ"), the
claim was denied by a written decision dated August 25, 2015.  The
Appeals Council affirmed the ALJ's decision by letter dated

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Rule
25(d) of the Federal Rules of Civil Procedure which addresses the substitution of parties when a
public officer is replaced, Nancy A. Berryhill should be substituted for Acting Commissioner
Carolyn W. Colvin as the defendant in this suit.  Fed. R. Civ. P. 25(d).  No further action needs to be
taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act,
42 U.S.C. section 405(g), which states that "[a]ny action instituted in accordance with this subsection
shall survive notwithstanding any change in the person occupying the office of Commissioner of
Social Security or any vacancy in such office."

December 15, 2016.  The Appeals Council's affirmance constitutes a "final decision" by the Agency from which Plaintiff timely appeals. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 1383(c)(3).  The parties have briefed the issues (Docs. 12, 13 and 14) and this case is now ripe for dispostion.

## II.  Testimony Before the ALJ.

The hearing before the AlJ occurred on May 19, 2015. Plaintiff testified as did Christina Marie Barlet (claimant's mother), Rick Barlet (claimant's father), John Kowalski of Luzerne County Children and Youth Services, and Jane Miller, also of Luzerne County Children and Youth Services.

### A. Plaintiff.

The Plaintiff's testimony may be summarized as follows.  She was eleven years of age at the time of the hearing and a student in the fifth grade at the Lake Lehman School District.  Her favorite subject is math.  Her least favorite subject is reading.  She gets extra help in school with both math and reading.  The extra help consists of allowing her extra time to complete her assignments. She also is allowed time to snack to help control her diabetic condition.  Her mother helps her with her homework.  (R.42-43).

Plaintiff stated that she participates in gym class but is restricted in that regard because she cannot touch latex balls or gym mats.  She gets along well with her fellow students and her teachers in her own estimation.  She states that she has not been

2

subjected to any disciplinary measures in school.  (R.44).

Plaintiff takes insulin at least twice daily and administers it herself.  She also takes Levothyroxine and allergy medications. These medications can make her tired and, at times, hyperactive. She lives at home with her mother, father, and two younger brothers.  She has three cats at home and takes care of them personally.  She also cleans her bedroom and bathroom and does not experience any physical problems when doing so.  She no longer has the assistance of a mobile therapist and has less help from a TSS worker than had formerly been the case.  (R.45-47).

### B.  Christina Marie Barlet.

The testimony of Christina Marie Barlet, Plaintiff's mother, may be summarized as follows.  Her daughter takes multiple medications including: Lantus, Novolog, insulin syringes and test strips, Lancet, Ketostix, Levothyroxine, Ventolin, Albuterol, Econazole cream, Flonase, and Benadryl.  These medications are basically for control of Plaintiff's diabetes and asthmatic/hyperallergic conditions.  In addition, Plaintiff's blood sugar level must be frequently monitored and her diet frequently adjusted to address fluctuations in her blood sugar level.  (R.47-50).

Plaintiff's treating physician was Dr. Stone until October of 2014 when he stopped practicing medicine.  Dr. Cook assumed her care in November of 2014.  She also saw several doctors at

3

Northeast Counseling Services, but, because of changes in government reimbursement practices, she can no longer go there. Dr. Cook and a Dr. Long, who also sees the Plaintiff, are affiliated with Geisinger Medical Center. She sees one or the other every two months or more often if she gets sick. She also sees Dr. Delregno for vision problems and Dr. Trovitch, a pediatric endocrinologist. (R.50-51).

Plaintiff's grades fluctuate. Her mother attributes this in part to the fact that she misses a lot of school due to her illnesses. At the time of the hearing, Plaintiff had already missed more than 20 days in the current school year. Plaintiff is identified as a special needs student and her schooling is governed by an individualized educational program. ("IEP"). A special education teacher helps Plaintiff in reading and math and assists her when she takes tests. Also, Mrs. Barlet must meet with cafeteria staff at the beginning of the year to make them aware of her child's dietary restrictions and to find out what she must personally supply to meet her child's needs. Every time there is a field trip Mrs. Barlet must attend because the school will not furnish a nurse for that purpose. She must also meet frequently with the principal, guidance counselors, and her child's teachers regarding her child's special problems. These problems include attention deficit disorder. Plaintiff cannot take the medications normally prescribed for attention deficit disorder because of her

4

allergy to gluten (Celiac disease). As a result, she is at times "hyped up" and "antsy" and this results in behavioral problems. At other times, if her blood sugar level gets too low or her asthma flares, she must be monitored in the nurse's office. (R.52-54).

Plaintiff's mother states that she is physically capable of dressing herself but that she often needs help with her personal hygiene. She must often be reminded to shower and her mother must monitor her in the shower to make sure she showers effectively. Plaintiff is very aggressive in her interactions with her younger brothers and is very inconsiderate at times. Mrs. Barlet attributes these behaviors to her child's diabetes and attention deficit disorder. When her child had access to the TSS worker her behavior improved. Because medical assistance no longer pays for the services of a TSS worker, she has been unable to provide for these services. (R.56-57).

Mrs. Barlet testified further that she had brought John Kowalski and Jane Miller from Luzerne County's Office of Children and Youth Services for purposes of securing their testimony. She stated that they were instrumental in forcing her child's school to develop a more comprehensive IEP to meet her needs. Before Mr. Kowalski and Ms. Miller became involved, the school was largely unresponsive to her child's special needs. Mrs. Barlet also noted that the school has been habitually resistant to supplying her child with things she requires such as certain food items, glucose

tests, alcohol wipes to test her sugar, latex-free erasers, special art supplies, and latex-free gloves. She also testified that she must constantly educate school personnel regarding her daughter's numerous special needs. (R.58-59).

## C. Rick Barlet.

Rick Barlet, Plaintiff's father, also testified regarding the difficulties they have experienced getting cooperation from school authorities to adapt to their daughter's special needs. He emphasized particularly their struggle with the cafeteria staff's inattention to the problems caused by even lightly touching any of the foods served to their daughter with latex gloves. When such cross-contamination occurs, their daughter experiences a severe allergic reaction secondary to her Celiac disease that often results in her missing school. He stated that his wife is often on the phone with the school nutritionist to find out what was served for lunch on days when their daughter comes home sick. On these occasions, it is often the case that her daughter was served food containing gluten, a substance she cannot tolerate. (R.60-62).

## D. Luzerne County Children's Services.

The final two witnesses were John Kowalski and Jane Miller, both employees of the Luzerne County Bureau of Children Services. Mr. Kowalski testified that he had been assigned to Plaintiff's case in December of 2012 due to her diabetic condition. He is a life-long diabetic himself and has lost he eyesight as a result of

6

the disease.  He stated that his task was to help Plaintiff "as much as I possibly could in terms of diabetic control, diet, education, and her situation at school for accommodations...".  He explained further that Plaintiff is a very brittle diabetic whose health is further complicated by her latex allergy and Celiac disease.  He stated that Plaintiff's eyesight had already been affected by the disease and her struggle with the disease will be something that will go on for as long as she lives.  He has tried to teach her to make better dietary choices and to be strictly compliant with her insulin regimen.  He stated further that Plaintiff's parents have gone beyond what would be expected of the parents of a diabetic but that doing so has been very costly to them.  He urged the AlJ to find in Plaintiff's favor because that result "would help her and her parents in the long run, and in the short run as well."  (R.66-68).

Jane Miller was the final witness.  She stated that she was employed by Luzerne County Children and Youth Services as a "special education advocate".  She helps the families of students with special problems with issues involving their schooling.  She corroborated Mr. Kowalski's assessment that Plaintiff's brittle diabetes, Celiac disease, and latex allergy pose very complicated problems both at school and in the home.  She stated that she was instrumental in helping Plaintiff's parents persuade her school to provide an IEP that is more truly reflective of the child's needs.

She stated that since the IEP had been created she had not heard from either the school or the family.  For this reason she assumed that the accommodations were proving to be beneficial.  (R.69-70).

**III.  Medical Evidence.**

Suffice it to say that the medical evidence of record from a variety of health care providers conclusively establishes that Plaintiff has been affected by uncontrolled diabetes mellitus since she was approximately four years of age.  In terms of behavioral/emotional difficulties, Plaintiff's oppositional defiance disorder ("ODD") attention deficient hyperactivity disorder ("ADHD"), and disruptive behavior disorder are all well documented in the record.  The ALJ has noted that each of these conditions constitutes a "severe impairment" in terms of the SSA's definitional requirements.  Plaintiff also has a well-documented history of numerous other conditions including Celiac disease,[2] allergy to latex products, asthma, and diabetic retinopathy.[3]

---

[2] Celiac disease (gluten-sensitive enteropathy), sometimes called Sprue or Coeliac, is an immune reaction to eating gluten, a protein found in wheat, barley and rye.  If you have Celiac disease, eating gluten triggers an immune response in your small intestine.  Over time, this reaction damages your small intestine's lining and prevents absorption of some nutrients (malabsorption). The intestinal damage often causes diarrhea, fatigue, weight loss, bloating and anemia, and can lead to serious complications.  In children malabsorption can affect growth and development, in addition to the symptoms seen in adults.  There is no cure for Celiac disease, but for most people, following a strict gluten-free diet can help manage symptoms and promote intestinal healing. www.mayoclinic.org/diseases/conditions/diabeticretinopathy.

[3] Diabetic retinopathy is a diabetes complication that affects eyes.  It is caused by damage to the blood vessels of the light-sensitive tissue at the back of the eye (retina).  At first, diabetic retinopathy may cause no symptoms or only mild vision problems.  Eventually, it can cause blindness.  The condition can develop in anyone who has Type I or Type II diabetes.  The longer you

There is no argument here about the presence of any of these afflictions.  The argument concerns the extent to which these conditions limit Plaintiff and produce "marked and severe functional limitations".  See 42 U.S.C.§ 1382c(A)(3)(C)(1).

**IV.  ALJ Decision.**

The AlJ's decision (Doc. 11-2 at 10-36) was unfavorable to the Plaintiff.  It included the following Findings of Fact and Conclusions of Law:

1.  The claimant was born on February 24, 2004. Therefore, she was a preschooler on July 31, 2013, the date the application was filed, and is currently a school-age child.

2.  The claimant has not engaged in substantial gainful activity since July 31, 2013, the application date.

3.  The claimant has the following severe impairments: diabetes mellitus, an oppositional defiance disorder (ODD), attention deficit hyperactivity disorder (ADHD), and a disruptive behavior disorder.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR

have diabetes and the less controlled your blood sugar is, the more likely you are to develop this eye complication.  www.mayoclinic.org/diseases-conditions/diabeticretinopathy.

416.924, 416.925 and 416.926).

5.   The claimant does not have an impairment or
     combination of impairments that functionally equals
     the severity of the listings at 20 CFR 416.924(d)
     and 416.926(a).

6.   The claimant has not been disabled, as defined in
     the Social Security Act, since July 31, 2013, the
     date the application was filed.

**V.   Disability Determination Process.**

The Social Security Administration has established a three-
step sequential evaluation process to determine whether an
individual under the age of eighteen is disabled (20 CFR
416.924(a).  At step one, the undersigned must determine whether
the claimant is engaged in substantial gainful activity.
Substantial gainful activity is defined as work activity that is
both substantial and gainful.  "Substantial work activity" is work
activity that involves doing significant physical or mental
activities.  "Gainful work activity" is work that is usually done
for pay or profit, whether or not a profit is realized.  Generally
if an individual has earnings from employment or self-employment
above a specific level set out in the regulations, it is presumed
that he or she has demonstrated the ability to engage in
substantial gainful activity.  (20 CFR 416.974 and 416.975).  If
the claimant does engage in substantial gainful activity, he or she

10

is not disabled regardless of his or her medical condition, age, education, or work experience (20 CFR 416.924(b)). If the individual is not engaging in substantial gainful activity, the analysis proceeds to the second step.

At step two, it must be determined whether the claimant has a medically determinable impairment that is "severe" or a combination of such impairments that is "severe" (20 CFR 416.924(a)). For an individual who has not attained age 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations (20 CFR 416.924(c)). If the claimant does not have a severe medically determinable impairment or combination of impairments, he or she is not disabled. If the claimant has a severe impairment(s), the analysis proceeds to the third step (20 CFR 416.924(a)).

At step three, the Social Security Administration must determine whether the claimant has an impairment or combination of impairments that meets or medically equals the severity of a listing, or that functionally equals one of the listings. In making this determination, the Social Security Administration must consider the combined effect of all medically determinable impairments, even those that are not severe (20 CFR 416.923, 416.924(a)(b)(4), and 416.926(a) and (c)). If the claimant has an impairment or combination of impairments that meets or medically

equals the severity of, or functionally equals one of the listings, and it has lasted or is expected to last for a continued period of at least 12 months, he or she is presumed to be disabled.  If not, the claimant is not disabled.  (20 CFR 416.924(b)).

As delineated above, the instant decision was made at the third step of the process when the ALJ found that the Plaintiff does not have impairment or combination of impairments that meet or medically equals the severity of a listing.  (R.at 18-20).

## VI. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a
> talismanic or self-executing formula for
> adjudication; rather, our decisions make
> clear that determination of the existence *vel
> non* of substantial evidence is *not* merely a

quantitative exercise. A single piece of
evidence will not satisfy the substantiality
test if the Secretary ignores, or fails to
resolve, a conflict created by countervailing
evidence. Nor is evidence substantial if it
is overwhelmed by other evidence--
particularly certain types of evidence (e.g.,
that offered by treating physicians)--or if
it really constitutes not evidence but mere
conclusion. *See Cotter*, 642 F.2d at 706
("Substantial evidence" can only be
considered as supporting evidence in
relationship to all the other evidence in the
record.") (footnote omitted). The search for
substantial evidence is thus a qualitative
exercise without which our review of social
security disability cases ceases to be merely
deferential and becomes instead a sham.

710 F.2d at 114.

     This guidance makes clear it is necessary for the Secretary to

analyze all evidence. If she has not done so and has not

sufficiently explained the weight given to all probative exhibits,

"to say that [the] decision is supported by substantial evidence

13

approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d

14

1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .").  "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented."  *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted).  Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless.  *See*, *e.g.*, *Albury v. Commissioner of Social Security*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review.").  An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

**VII. Discussion.**

**A. General Considerations**

At the outset of our review of whether the ALJ has met the substantial evidence standard regarding the matters at issue here, we note the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits.  *See Dobrowolsky*,

606 F.2d at 406. Social Security proceedings are not strictly adversarial, but rather the Social Security Administration provides an applicant with assistance to prove his claim. *Id.* "These proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act." *Hess v. Secretary of Health, Education and Welfare*, 497 F. 2d 837, 840 (3d Cir. 1974). As such, the agency must take extra care in developing an administrative record and in explicitly weighing all evidence. *Dobrowolsky*, 606 F.2d at 406. Further, the court in *Dobrowolsky* noted "the cases demonstrate that, consistent with the legislative purpose, courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it be strictly construed." *Id.*

**B.    Plaintiff's Allegations of Error.**

Plaintiff asserts that the AlJ erred in three instances which, singly or in combination, requires a remand or reversal of the ALJ's decision. We shall consider these assignments of error in the order made.

**1.    Whether the ALJ properly evaluated the Plaintiff's medical conditions with respect to the criteria of Listing 109.00 Endocrine Disorder Children?**

Listing 109.00 establishes the criteria for evaluating whether

16

various endocrine disorders, including diabetes mellitus ("DM"), are so severe in a claimant as to be disabling.  DM is evaluated by reference to 109.00 C which, in pertinent part, states that, in evaluating DM in children age six or older who take insulin on a daily basis, the SSA will

> ...follow our rules for determining whether the DM is severe, alone or in combination with another impairment, whether it meets or medically equals the criteria of a listing in another body system or functionally equals the listings under the criteria in § 426.926(a), considering the factors in § 416.924.  The management of DM in children can be complex and variable from day to day, and all children with DM require some level of adult supervision.  <u>For example, if a child age 6 or older has a medical need for 24-hour-a-day adult supervision of insulin treatment, food intake, and physical activity to ensure survival, we will find that the child's impairment functionally equals the listings based on the example in § 416.926 a(m)(5).</u>  (Emphasis added).[4]

By way of explanation, while recognizing that Plaintiff was a child of nine years on the alleged onset date, the ALJ concluded, "...the claimant does not require 24-hour supervision, she takes

---

[4] Section 416.926 a (m)(5) lists the need for "24-hour-a-day supervision for medical (including psychological reasons)" as an example of an impairment that functionally equals a listing.

insulin herself, and she has no difficulties in performing her daily chores from a physical standpoint.  Accordingly, for the aforementioned reasons, the undersigned finds that the claimant's diabetes mellitus does not satisfy listing level severity."  (R.at 18).  Plaintiff contends that the ALJ did not adequately account for all Plaintiff's recognized impairments in concluding that she does not require "24 hour adult supervision".  Based upon our review of the record and the lack of detail (and citation) in the ALJ's brief explanation of how she reached her conclusion, we agree.

The Court is struck by the fact that, in reviewing innumerable Social Security decisions over the years, the Agency characteristically is concerned with the provision of documented objective medical evidence.  Here the record is liberally sprinkled with medical reports that document the Plaintiff's A1C levels *as* elevated on at least 30 occasions between July of 2009 and December of 2014.[5]  The Plaintiff's A1C levels were measured at anywhere between 10.8% and 12.9% on these many occasions over that five-year span of time.  See citations in Plaintiff's Reply Brief (Doc. 14 at 8).  This persistent pattern of significantly elevated A1C levels over a period of years provides much support to Plaintiff's

---

[5] An A1C test is used to diagnose diabetes.  A1C levels as high as 8% may be appropriate for diabetics.  The higher an individual's A1C level, the higher will be the risk of diabetic complications.  www.mayoclinic.org/test-procedures.

18

assertion that she requires 24 hour adult supervision.

The record also serves to demonstrate that Plaintiff's ODD and ADHD are compromising her ability to do what is in her best interest with respect to managing her diabetes. The record contains numerous references supporting Plaintiff's assertion that this child has an inability to resist eating foods that do not belong in a diabetic's diet. These references are entitled to some credence given the numerous aforementioned chronic elevated A1C levels.

The ALJ's explanation of why she concluded that this claimant does not require 24 hour adult supervision is insufficient to convince the Court that her conclusion is supported by the requisite substantial evidence. Substantial evidence exists only "in relationship to all other evidence in the record," Cotter, supra, at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp., v. N.O.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. See Mason v. Shalala, 994 F.2d 1058, 1064(3d. Cir. 1993). The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reason for rejecting that evidence. Cotter, at 706-707. That has not happened with respect to the issue of Plaintiff's need for 24 hour adult supervision.

The ALJ's short shrift discussion, in which she rejects the premise that Plaintiff's diabetes (which the AlJ acknowledges to be a "severe impairment") requires 24-hour adult supervision, does not address the indisputable evidence that on many occasions over a period of years Plaintiff's blood sugar tests measured unacceptably high levels.[6] Also, the ALJ has failed to discuss why she has apparently rejected the assertion that Plaintiff's ODD and ADHD (which the ALJ also has recognized as "severe impairments") are responsible for Plaintiff consuming food that she simply must not eat and how this evidence factors into the ultimate conclusion on how much adult supervision is required for this child.

For these reasons, we conclude that Plaintiff's assertion of error regarding the ALJ's evaluation that she does not meet the criteria of Listing 109.00 C Endocrine Disorders Children is accurate. The case must be remanded on this point to require the Agency to explain in more detail how it evaluated the evidence, particularly with respect to the aforementioned elevated A1C levels and Plaintiff's alleged inability to monitor her diet as a result of her ODD and ADHD.

---

[6] The AlJ does briefly discuss Plaintiff's A1C levels. (R.at 21). However, the ALJ does not acknowledge that Plaintiff's A1C levels have been significantly elevated on many occasions. Inexplicably, the ALJ notes that Plaintiff's A1C levels improved in August and November of 2014 when it was measured at 9.3%. What the ALJ does not say is that this "improvement" to 9.3% is still elevated according to the guidelines for diabetes management set forth by the Mayo Clinic. See footnote 5, ante.

**2. Whether the ALJ's finding of less than marked impairment in the domains of caring for yourself and interacting and relating to others are supported by substantial evidence?**

Plaintiff alleges that substantial evidence of record does not support the ALJ's conclusion that Plaintiff has "less than marked impairment" in the domains of "Interacting and Relating with Others" (R.at28) and "Caring for Yourself" (R.at30). While the Court might well have found differently on this issue, that is not the test. See Hartranft, supra, at 360. The ALJ relied upon reports from Plaintiff's third grade teacher and four physicians who all indicated that Plaintiff's limitations in these domains were not significant enough to be considered "marked". This evidence supports the ALJ's conclusion in this context with the requisite substantial evidence because a reasonable mind might accept it as adequate to support her conclusion. Richardson v. Perales, supra. Thus, the Plaintiff's assignment of error on this point must be rejected.

**3. Whether the ALJ failed to properly evaluate opinion evidence of plaintiff's psychological/emotional limitations?**

Plaintiff's allegation that the ALJ improperly considered opinion evidence stems from her perception that the ALJ discounted portions of the assessments of Drs. Stone and Tuckerman and Psychologists Kapcala and Galdieri and also failed to discuss the

21

opinion provided by psychologist Ron Gavlick.

With respect to the assessments of Drs. Stone and Tuckerman and Psychologists Kapcala and Galdieri, the Courts' review of those assessments reveals that each of them affords a reasonable basis for the ALJ to conclude, as she did, that Plaintiff does not have "marked" limitations in her interaction and relationship to others or in her ability to care for herself.

The Plaintiff also notes that the ALJ does not discuss the assessments provided by Psychologist Ron Gavlick on June 26, 2013 and May 7, 2014. (R.at 1168-1175 and 1563-1569). Plaintiff observes correctly that 20 CFR 416.927 requires that all information about the nature and severity of impairments is to be assessed. However, having read Psychologist Gavlick's reports, the Court concludes that it is very much in accord with those of Mssrs. Kapcala and Galdieri. While Gavlick does note Plaintiff's struggle with DM and Celiac's disease, he does not conclude in either report that Plaintiff had "marked" impairment in her ability to relate to others or in her ability to care for herself. Thus, the Court views the ALJ's failure to discuss Gavlick's assessments as harmless error. Accordingly, Plaintiff's assignment of error on this point must be rejected.

## VII. Conclusion.

Plaintiff's assignment of error regarding whether the record contains substantial evidence that she does not require 24-hour

adult supervision is affirmed.  Plaintiff's other assignments of error are rejected.  This matter is remanded to the Commissioner for further proceedings to include a more detailed discussion of how the Agency concludes that this child, with a well-documented history of uncontrolled diabetes and serious psychological problems (ODD and ADHD) that result in improper dietary choices that exacerbate her DM, is not in need of 24-hour adult supervision.[7]
An Order consistent with the foregoing discussion will be filed contemporaneously.

**BY THE COURT**


S/Richard P. Conaboy
**Honorable Richard P. Conaboy**
**United States District Court**


Dated: September 20, 2017

---

[7] In the alternative, the Commissioner may certainly choose to approve Plaintiff's application for SSI benefits inasmuch as the record obviously contains substantial evidence in support of that conclusion.